AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

FILED — LODGED
RECEIVED

FEB 05 2016

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                                      DEPUTY

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Residence and Vehicle of Daniel Seth Franey

)
)
)
)
)
)

Case No. MJ16-5023

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incorporated by reference.

located in the ____Western District____ District of _____Washington_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 922(g)(8) and 922(o) | Unlawful Possession of Firearms and Machineguns |

The application is based on these facts:

See Affidavit of Joseph C. Deaver, Special Agent, which is incorporated by reference.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Joseph C. Deaver
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ____02/05/2016____

_____
*Judge's signature*

City and state: Tacoma, Washington

Magistrate Judge Karen L. Strombom
*Printed name and title*

**ATTACHMENT A**
**Places to be Searched**

1. Residence of Daniel Seth Franey, located at 25 Fairbairn Road, Montesano, Washington, including any sheds and/or outbuildings on this property.   The property is further described as: a blue/green, single-story family residence on 2.05 acres of land.   There are also two outbuildings/sheds that have been observed on the property, located on the westernmost portion of the property. There also may be other outbuildings, including a possible pump house.

2. 1997 Lincoln Town Car, bearing Washington license plate B00263K and VIN 1LNLM81W3VY705883, registered to Daniel Seth Franey.

**ATTACHMENT B**
**Items To Be Searched For And Seized**

The items to be searched for and seized are the following items or materials that may contain evidence of the commission of, the fruits of, or property which has been used as the means of committing the offenses of Unlawful Possession of a Firearm, in violation of Title 18, United States Code, Section 922(g)(8), and Possession of a Machinegun, in violation of Title 18, United States Code, Section 922(o):

   a. Items of dominion and control of the premises, to include utility bills, telephone bills, correspondence, business/financial records, and identification documents.

   b. Weapons (including but not limited to firearms and explosives) and ammunition, as well as accessories and equipment associated with weapons (including but not limited to equipment for cleaning and maintaining weapons, magazines, scopes, silencers, holsters, and carrying cases).

   c. Records or documents relating to the defendant's legal prohibition against possessing firearms, including but not limited to court orders and pleadings related to past legal proceedings.

   d. Materials related to the defendant's stated motivation (as described in the attached affidavit) to possess firearms, including but not limited to materials about ISIS and alleged atrocities committed by the United States military overseas, and materials related to plans to attack a military facility and/or kill law enforcement officers or employees of the U.S. government.

   e. Address books, directories, or contact lists.

   f. Cellular phones and/or smart phones, to be searched *only* for the following:

   - Assigned number and identifying telephone serial number (ESN, MIN, IMSI, or IMEI);
   - Stored list of recent received, sent, and missed calls;
   - Stored contact information;
   - Stored photographs, including any embedded GPS data associated with those photographs;
   - Stored text messages;
   - Stored information relating to historical internet usage, including but not limited to stored URL information; and
   - Stored historical locator data, including GPS and cell site data.

1

1

2                                   **AFFIDAVIT**

3 STATE OF WASHINGTON        )
                             )        ss
4 COUNTY OF KING             )

5

6        I, Joseph C. Deaver, having been duly sworn, state as follows:

7                          <u>**AFFIANT BACKGROUND**</u>

8        I am a Special Agent with the Federal Protective Service ("FPS"). I have been

9 employed by FPS in a law enforcement capacity for approximately twelve years. More

10 specifically, I served for five years as an FPS uniformed police officer and for the past

11 seven years as a Special Agent. Since August 2014, I have been assigned to the Federal

12 Bureau of Investigation ("FBI") Joint Terrorism Task Force ("JTTF"), Seattle Division,

13 in Tacoma, Washington.  At the JTTF, I work with a team of federal, state, and local law

14 enforcement agents and officers on investigations relating to domestic and international

15 terrorism.  As a result of my training and experience, I am familiar with tactics, methods,

16 and techniques used by terrorist organizations and their members, and by individuals

17 seeking to join or engage in acts on behalf of terrorist organizations.  I have also

18 conferred with other FBI Special Agents and FBI JTTF Task Force Officers who have

19 expertise and experience in counterterrorism investigations.

20               <u>**INTRODUCTION AND PURPOSE OF AFFIDAVIT**</u>

21        I make this Affidavit in support of an application for warrants to search the

22 premises of the residence of Daniel Seth Franey, located at 25 Fairbairn Road,

23 Montesano, Washington,[1] and a 1997 Lincoln Town Car, bearing Washington license

24 plate B00263K and VIN 1LNLM81W3VY705883, registered Daniel Seth Franey, for

25 _____

26 [1] This residence is a blue/green, single-story family residence on 2.05 acres of land.  There are
    also two outbuildings/sheds that have been observed on the property, located on the westernmost
27 portion of the property.  There also may be other outbuildings yet to be observed, including a
    possible pump house.  This warrant seeks permission to search the primary residence as well as
28 any and all outbuildings and/or sheds on the property.

Affidavit in Support of Search Warrants
USAO#2015R01121 - 1

1   evidence of the offenses of Unlawful Possession of Firearms, in violation of Title 18,

2   United States Code, Section 922(g)(8), and Possession of Machineguns, in violation of

3   Title 18, United States Code, Section 922(o).

4        The facts set forth in this Affidavit are based upon my personal observations, my

5   training and experience, my review of pertinent documentation, and information I have

6   obtained from other investigating law enforcement personnel as well as witnesses. This

7   Affidavit is intended to show merely that there is sufficient probable cause for the

8   requested warrants and does not purport to set forth all of my knowledge of or

9   investigation into this matter. Unless specifically indicated otherwise, all conversations

10  and statements described in this Affidavit are related in substance and in part only.

11              **SUMMARY OF PROBABLE CAUSE**

12       On this same date, I executed an affidavit in support of a Criminal Complaint in

13  the matter of *United States v. Daniel Franey*. The Criminal Complaint is attached hereto

14  as Exhibit 1, and is hereby adopted and incorporated as if set forth fully herein. The

15  events in the Criminal Complaint focused on matters occurring on and before November

16  13, 2015. This affidavit provides additional and more recent information related to the

17  charges alleged against Franey, regarding his continuing and persistent efforts to obtain

18  firearms from UC1 and other persons; Franey's stated motives for obtaining the firearms;

19  and Franey's statements about how he wants to use the firearms, specifically, among

20  other things, to kill federal and local law enforcement officers and to conduct a potential

21  attack against a U.S. military facility.

22       **A. Franey's Erratic Behavior in late November/early December 2015.**

23       Based on a series of police contacts and physical surveillance observations in late

24  November and early December 2015, it became apparent that Franey was beginning to

25  act increasingly erratic.

26  //

27  //

28  //

Affidavit in Support of Search Warrants
USAO#2015R01121 - 2

1    On November 24, 2015, a concerned citizen in Montesano called 911 and reported

2 that Franey arrived at his/her house and said he was "checking on the house for [a]

3 brother." Franey also told the reporting citizen that he "wanted to make sure he wasn't

4 with the feds."

5    On November 27, 2015, Grays Harbor County Sherriff's Department deputies

6 responded to Franey's residence with regards to a disturbance. According to the police

7 reports, Franey spoke with the officers and made several comments, including that: their

8 police uniforms represented oppression; he knows he is under surveillance by the FBI

9 and CIA; he does not have any weapons and does not know how to make bombs; and he

10 used to be in the military but he refused to follow orders so he eventually deserted.

11    While the police were at his house on November 27th, Franey spoke to UC1 over

12 the telephone. Franey said he told the police to stay out "on the edge" of his property,

13 and then stated:

14      I'm letting you know, like. Look dude, if you think I'm gonna trust you
15      ever again, you better put something in my hands, and I'm talking – I don't
        care if it's a handgun, a shotgun, whatever. Man, this is my family. Next
16      time we hang out, I wanna get – Next time you come, or next time I see
        you, just for the sake of decency, I want something in my hands. Just for
17      myself and my children. . . . I'm letting you know this is the condition,
18      right here, bro.

19    Shortly after the police departed his residence on November 27th, Franey spoke

20 again with UC1 over the telephone. UC1 asked Franey what happened with the police.

21 Franey stated, "They're trying to get information, and any brothers that try and like,

22 support the right thing, they try and say they're crazy, they try and talk 'em out of it, they

23 try and use 'em as bait. They do all these types of things." Franey further stated, "This is

24 gonna end quickly for these people, if they don't get it together. And, I mean, that could

25 be a hundred years or whatever, but. . ." Franey continued by saying, "[A]ll these other

26 brothers, we just wanna leave, and they won't let us. So, it's like, well, you better leave

27 us alone." Franey then ranted about "pig feds" and stated, "And you know what, I don't

28

Affidavit in Support of Search Warrants
USAO#2015R01121 - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  know when it's gonna happen, but one of these stupid idiots is gonna walk up to me on

2  the wrong fucking day.  This goes for anyone.  Either in the mosque, outside of the

3  mosque.  Uniformed or ununiformed."  UC1 advised Franey to "be careful," and Franey

4  assured UC1, "I didn't act too crazy, I really didn't."

5          On November 30, 2015, UC1 and Franey spoke again over the telephone.  Franey

6  told UC1 that his power was turned off because he didn't pay the electric bill.  Franey

7  said he needed $160.00 to get his power turned back on.  UC1 agreed to pay the electric

8  bill by credit card.[2]  UC1 said he would take it out of "what I was gonna pay you for

9  work next week," referring to a potential upcoming firearms delivery trip.

10          On December 1, 2015, Franey went to the non-operational Satsop Nuclear Power

11  Plant and had contact with an employee, who regarded the incident as suspicious and

12  reported it to local law enforcement authorities.  The Satsop Nuclear Power Plant is

13  located near Franey's home.  The plant has two large cooling towers that were designed

14  to house nuclear operations, but the plant was never completed and the towers are non-

15  functional.  The employee was working at the power plant on December 1st.  At

16  approximately 3:30 p.m., the employee observed Franey's vehicle driving slowly through

17  one of the facility's parking lots.  The vehicle eventually drove towards the employee and

18  Franey exited the vehicle.  Franey asked the employee if there were any restaurants at the

19  facility, to which the employee said there were none.  Franey asked if the employee knew

20  anything about a plastics facility at the plant, and the employee told him there was a

21  nearby mill that made siding out of recycled plastic and woods chips.  Franey then asked

22  whether the cooling towers were operational, and the employee stated they were not.

23

24  _____

25  [2] As referenced in this telephone call, UC1 paid $160 for Franey's electric bill on November 30,

26  2015.  At Franey's request, UC1 also paid $160 for Franey's electric bill on December 14, 2015.
   In addition to these payments, UC1 provided Franey with $140 cash on October 15, 2015, for

27  use in paying bills and for general subsistence.  UC1 also provided Franey with two cell phones
   to use and paid for the service for those phones, and UC1 allowed Franey to keep one of the cots

28  and sleeping pads they used during the camping trip on November 12-13, 2015.

Affidavit in Support of Search Warrants
USAO#2015R01121 - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 Franey also asked whether the facility made power, and the employee answered it did
2 not. Franey then thanked the employee for his time, and then departed the area.

3   The next night, on December 2, 2015, police officers responded to a call from a
4 complainant who reported that Franey had been pounding on the door to their residence
5 for ten minutes, and then departed, stating he would be "back during the daylight." The
6 officers went to Franey's residence to speak with him about the incident. Franey told the
7 officers that he had gone to the neighbor's house to spread the word of the Muslim
8 religion. Franey further stated that the governments of the world needed to fall, and that
9 law enforcement officers should "sit back" when they start fighting against the
10 governments. The officers told Franey they would sit back if Franey did so peacefully,
11 but would have to intercede if Franey was doing this in the wrong way. Franey replied
12 that if the police interceded, "it would become very messy." Franey also told the officers
13 that he believed there would someday be "a federal stand-off at my house."

14   On both December 1 and 2, 2015, Franey was observed looking at firearms-related
15 items at a hardware store in Aberdeen, Washington. Specifically, on December 1st,
16 Franey went to the hardware store and was viewing airsoft pistols/rifles and firearm
17 ammunition. Franey made an unrelated purchase on his way out of the store. The next
18 day, Franey went back to the same hardware store and viewed firearm ammunition and
19 rifle scopes. On this occasion, Franey purchased a circuit breaker as he left the store.

20   Another concerned citizen contacted the Grays Harbor County Sheriff's
21 Department to report a suspicious incident involving Franey that occurred in early/mid-
22 December 2015. The citizen is an employee at a business that Franey frequents.
23 According to the citizen, Franey visited the business and had a conversation with the
24 owner, during which Franey was expressing his "typical jihadist, extremist" beliefs.
25 Franey also told the owner that he (Franey) would be changing his name soon, and would
26 no longer be known as "Muhammed." Franey told the owner that "when Islam activates
27 a person," they then have to change their name. Franey made no mention of a specific
28 time frame when he would be "activated" or would change his name.

Affidavit in Support of Search Warrants
USAO#2015R01121 - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1      B. **Meeting on December 3, 2015.**

2      On December 3, 2015, UC1 and another undercover officer (one of UC1's

3 "customers") met with Franey at his residence.  During this meeting, UC1 told Franey

4 that he was extremely angry because his brother recently had been beaten by police

5 officers in California "for no reason."  UC1 further stated that he was starting to come

6 around to Franey's way of seeing things.  As they continued to talk, Franey claimed he

7 told "every local cop, 'We'll cut your head off if you don't help us or stay out of the

8 way.'"  Franey added, "The Islamic State is here, period."

9      They discussed the recent terrorist attack in San Bernadino, California, and Franey

10 stated, "Allah will know if this was even Muslims who did it.  Now obviously for me, I

11 have different targets.  I mean . . . we have high, high, lofty goals."  Franey also

12 referenced his continued interest in acquiring firearms from UC1, stating: "Basically, I

13 haven't been able to talk to the brothers about money, but if we can get money, I mean,

14 like, whatever you guys have."

15      Franey later stated, "This has to end. . . . It's just gotta be the right few."  Franey

16 referenced that the Koran talks about "a group of just a few" overtaking a large army

17 "with the help of Allah."  Franey further stated, "It's out of line, it must be stopped. . . .

18 You can't feel bad when you put up your sights on these cops, these feds, these SWAT

19 teams, these riot police, these FBI guys, these soldiers, you cannot have compassion for

20 them.  They have made the wrong decision. . . . Some people were only created for the

21 fire."  Shortly thereafter, Franey stated, "That judge the other day, I could have cut his

22 head off.[3]  But I don't want to just cut one judge's head off. . . . I want to cut a lot of

23 judges' heads off."

24      Franey told the UCs, "Now, if you wanna actually talk about actually doing this,

25 man.  You know, we just need some guys and some tools, man.  It's revolution time."

26 UC1 replied, "I'm there."  UC1 further stated that he was ready to go kill some "cops."

27

28 [3] Earlier in this conversation, Franey had been expressing animosity towards a judge who had presided over some sort of family law matter involving Franey.

Affidavit in Support of Search Warrants
USAO#2015R01121 - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Franey replied: "I wish that I was at that level of iman . . . I don't feel too comfortable
2  with Allah with my own self. But I know I would be willing to go fight. But let's be
3  effective with this. You know you want to be effective with this." Franey stated that if
4  he was in UC1's position and his brother had been beaten, "I would probably do it for the
5  sake of Allah." But Franey advised UC1 to wait for his brother to get out of the hospital
6  and then "maybe he'll [the brother] do it with you and maybe you'll have an Army."
7  Later in the conversation, UC1 stated, "I don't know if I can wait."

8      Franey discussed in general terms various types of attacks they could commit in
9  the future against military targets if they had a large group of people. Franey stated,
10  "This could happen, but we don't have any tools." UC1 replied, "Tools are not a
11  problem." A few minutes later, Franey stated: "We're the least respected terrorist cell.
12  But honestly, we're the scariest one because we speak the truth and we're ready to fight.
13  And a lot of brothers might be ready to fight, and a lot of brothers might be speaking the
14  truth, but they're not ready to fight and speaking the truth." Franey later added, "I don't
15  know any other way to say it. I'm speaking in plain English. If you guys know anyone
16  that's a man, who loves God, if you know anyone who wants to become a Muslim and
17  kill some people. . . . This is not gonna end any other way." UC1 replied, "You don't
18  gotta convince me." Franey said, "We're past the planning stage. . . . It's easy enough."

19      In discussing his views of jihad, Franey stated that Muslims cannot "go raping"
20  and cannot kill "kids or innocent people." UC1 asked how, then, Franey justified the
21  attacks in Paris. Franey rhetorically asked about the victims, "Were they innocent?" and
22  then explained that they were "of age people" who were partying in Paris and their
23  country killed Muslims, so "their thoughts were not with the Muslims." Franey further
24  asked, "How many innocent children died that same day in the Muslim world? Were
25  killed by those countries?" Franey also expressed doubt that "the brothers there" (ISIL)
26  committed the Paris attack.
27
28

Affidavit in Support of Search Warrants
USAO#2015R01121 - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    A few moments later, for the first time, Franey referenced an upcoming military

2 gathering in the nearby town of Ocean Shores, Washington, that he considered to be a

3 good target for an attack:

> There's a few spots around here, too, that wouldn't be bad to hit, you know.
> They put the generals and colonels up a few weeks out of the summer at
> this place north of Ocean Shores, this big resort. . . . They rent out this
> huge resort for all these colonels and generals to come party at. . . . We
> could kill them all.[4]

8    UC1 said, "That sounds better than a base, to me." Franey replied, "A lot easier. .

9 . . There's a lot of options." Later in the conversation, Franey stated, "If we wanna hit

10 that, it'd be a summertime deal. . . . There is some preparing to do, right? . . . But, I

11 mean, I wouldn't mind if we didn't let another summer go by where that officer meeting

12 got jacked up. . ." Later in the conversation, UC1 asked Franey, "How many people do

13 you think would come to the table for this, this place you were talking about?" Franey

14 replied, "Oh, the generals and colonels? [] Enough to deal with them." UC1 asked, "Do

15 you think so?" Franey responded, "You and me could deal with them, with guns. It's a

16 bunch of colonels getting drunk. No guns, no guards." UC1 said it would be good to

17 "plan it out better . . . because you want to be effective, right?" Franey replied, "These

18 are the people making the decisions. Highly effective. Highly effective."

19    At the end of the meeting, Franey encouraged UC1 to take things slowly (in

20 response to UC1's comments about his anger over his brother's beating and not wanting

21 to "wait"). Franey assured UC1 that "paradise is waiting . . . but you don't know how

22 much more you could be getting if you wait a little while." UC1 reiterated that he was

23 "ready." Franey replied, "I hear that. . . . Slowly, slowly, man. Your brother, you

24 know, nurture and teach []. I mean, I'm not trying to hold you back, I wanna go too, but,

25 I don't have any means. These people . . . crying because they don't have the money to

---

[4] Franey appears to be referencing a particular facility located in Pacific Beach, Washington, which has a campground, RV park, and other facilities that are accessible only to active military members, reservists, retirees, and people otherwise associated with the military.

1  go or the weapons. This is our condition right now." UC1 answered, "We can talk about

2  that later." Franey and UC1 made plans to meet for lunch over the next few days.

3      **C. Meeting on December 5, 2015.**

4      On December 5, 2015, UC1 met for lunch with Franey. During the meeting, and

5  after Franey had discussed many of his previously articulated radical views about ISIL

6  and jihad, UC1 stated that he was "ready," referencing a potential attack. Franey said,

7  "I've been in up to here since I became Muslim." UC1 said, "It's like, when?" A few

8  minutes later, UC1 said, "I kind of like the idea about that retreat. To be honest with you,

9  that seems like a cake-walk." Franey replied: "All I know is, they get together in the

10  summer at a resort. . . . And this resort, it's filled up with generals and generals, and

11  stuff – captains. These are all educated, so they've gone to college and they've made

12  their decisions." Franey explained that the generals are the ones responsible for the arms

13  deals and who are on CNN requesting additional weapons.

14      After eating lunch, UC1 and Franey went to sit in UC1's vehicle to continue

15  talking. UC1 asked where the military retreat was located. Franey replied:

16      It's not far from here. And it's – they've only got one road, main road,
   which is the coast road. Not very heavily travelled and easily shut off. . . .
17      They'd be nothing dude. I mean, ten guys or something. Literally, right? I
   mean, it'd be easy, right? A bunch of generals and captains, even if it's
18      only a couple dozen, that's worth it. . . . We find out when this party is. I
   mean, we don't need a lot of guys for this. We can go in and out if we
19      wanted. . . . There'll be no live shooting, if there was still live shooting
20      it'll be cops dropping. I mean, however you guys wanna do it.

21

22      UC1 said they needed to "do it right." Franey responded that he would "bring 100

23  brothers or 50," and UC1 could bring 50 brothers. UC1 said he already has people who

24  would participate. Franey replied, "I can bring some people." Franey further stated, "It's

25  exciting. I've been waiting on this forever, man. . . . I mean, it is time to hit 'em. And

26  the brothers – there's strategies of war, and one of 'em is, you know, hit 'em and hit 'em

27  and hit 'em . . ."

28

Affidavit in Support of Search Warrants
USAO#2015R01121 - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Later on December 5, 2015, Franey exchanged the following text messages with UC1, during which he once again requested a firearm from UC1:

Franey:    I was serious about leaving something for me and my family but whatever maybe it's the *qadr* of Allah

UC1:       I'm not sure what you are asking me. Forgive me. Brother, are you referring to needing wood and the paying of your electrical bill? If so, I thought you meant you would need that after work next week.

Franey:    No [] nothing like man forgive these are tense times they want all America to be packing but not for any sane reason to shoot Muslim's [sic] if they fill [sic] like it.

UC1:       Forgive me. I understand now. I am concerned about that. First, I don't get them until I pay or get fronted and then I have to immediately pay back from what I get. . . . I am not going to take any chances that could ruin that. Meaning, you and I are not supposed to have those. If we get caught with any between now and when we make ou[r] move, it ruins everything. Please delete this text after you read it.

D. **Meeting on December 19, 2015.**

On December 19, 2015, UC1 met with Franey and discussed, among other things, Franey's previously articulated idea of attacking the military retreat. Franey began this discussion by using the word "pray" as code for conducting an attack. Specifically, he told UC1: "The sooner the better. I want to go pray, too. Just need a few guys. We just need a couple-few guys and we can go pray." UC1 replied, "I can go pray on my own, bro. I wanna go pray at a retreat. The people sit back fat and sweaty with a cigar. . . ." Franey answered, "It has to be done. Someone has to do it. It's something that without a doubt would be pleasing to god. If you did it, would be pleasing to god. There's no doubt about this." UC1 then stated, "As soon as I know that. When?" Franey replied, "When – I think only Allah knows. . . . When you seek certain knowledge, and then it becomes clear, you know it's clear."

Affidavit in Support of Search Warrants
USAO#2015R01121 - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   Franey further stated, "I'm trying to find the date. I'm trying to find the best date,
2   you know what I mean? . . . I'm trying to find the best date, all right?" UC1 replied,
3   "Well, you let me know. And then we gotta find out . . ." Franey interrupted and stated,
4   "That it's okay [with god]?" UC1 replied, "I need to know that, I need to know that
5   without a doubt. But, there's nothing wrong with planning out your prayer. Finding out,
6   you know, 'cause I don't know anything about it. Like, where it is, all that kind of stuff."
7   Franey then stated, "When I heard about it, I said, 'Oh, save that one for a special
8   occasion.' I mean, I'm not gonna try and, like, walk around and look at it, that's for sure.
9   . . . Yeah, I've gotta get some information." UC1 replied, "You gotta know like, where
10  to go, the best place to go, so you're not, you're not running into a wall. You know?
11  'Cause believe me, man, when I know it's right, and I know that –" Franey interjected,
12  "You have a shot at being accepted." UC1 continued by saying that when he knows "the
13  place, and I know certain information, it'll be done right." Franey advised UC1, "Don't
14  you go do anything crazy without me, man. I'm serious."

15  **E. Text Messages Between UC1 and Franey.**

16      On December 24, 2015, Franey and UC1 exchanged the following text messages,
17  during which Franey expressed his growing impatience and desire to move forward with
18  violent action:

19  Franey:        Asalaamu alaikum wa rahmatullah akhi kafe howlick  what's
20                 up  its passed [sic] time to be in this game  I'm getting a little
                   annoyed at these government agencies and all the mainstream
21                 media bull shit  I'm about burnt on this situation  I'm
22                 seriously annoyed at all these loser idiots  it's time to quit
                   being pussies and stop with all the chitter chatter talking and
23                 squawking

24  UC1:           I have always loved your passion brother. Insha Allah we
25                 should take time and take a retreat and pray until then sabr.
                   Remember, as you so smartly said, only so much can be truly
26                 understood in a text or phone discussion. [W]e can meet
27                 soon. . .

28

Affidavit in Support of Search Warrants
USAO#2015R01121 - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

On January 12, 2016, Franey and UC1 exchanged the following text messages, during which Franey again suggested he wanted to obtain firearms from UC1 and was looking for money to purchase them:

UC1:     [D]o you know anyone who wants a bed? I need $ and may start selling some stuff?

Franey:  [N]ot unless bed is code [for guns] but your welcome to stay here anytime and the mosque and [] I have an idea about some money [] everything will be fine.

On January 15, 2016, Franey sent a text message to UC1 stating, "Alhemdulilah passed [sic] time way passed [sic ]time time for action . . ."

F.  **Contacts Between UC1 and Franey in Late January 2016.**

On January 28, 2016, UC1 and Franey spoke over the telephone and made plans to meet the following day. During the conversation, UC1 expressed frustration that Franey was "still suspicious" of him being a law enforcement officer. Franey replied, "I don't have nothing in my hands. I don't have nothing in my hands. And I told you a long time ago, I told you months ago . . . 'You better put something in my hands, or I will not be cool with you.'" Franey later stated, "I have money now, man. . . . The reality is, you know, it's 'go time,' man. I mean, for me." UC1 assured Franey that he no longer had any qualms about selling him firearms, and they agreed to talk about it further when they met the next day.

On January 29, 2016, UC1 and Franey spoke on the telephone while Franey was driving to meet with UC1. On several occasions during this conversation, Franey expressed that he was running out of patience and was ready to move forward with some violent action. For example, Franey said: "I'm not fit, honestly, to do much else right now. I'm just not fit to be with kids, with women, with coconuts, with Americans, I'm not fit to work. I'm not fit to do anything else." Franey further stated, "I do wanna kill agents really badly. . . . I just want pigs and cops and agents lined up in front of me, and I'll fight 'em." UC1 told Franey, "If you're serious, I'm serious." Franey replied, "They

Affidavit in Support of Search Warrants
USAO#2015R01121 - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   can imprison me until whenever they want, but [] we're gonna be victorious. I know

2   what's right. I just don't know if Allah is gonna accept me, but I'm still gonna make my

3   effort." Towards the end of the conversation, Franey stated: "We don't know what Allah

4   has decreed. We might not ever make it to the retreat, man. We might run into some

5   guys tonight, man. You never know. . . . This is us sacrificing everything we have for

6   the sake of Allah. . . . And there's no clearer time that this is necessary."

7        A short time later, Franey met with UC1. During this meeting, Franey again

8   expressed a desire to engage in violence, telling UC1: "You know who I'm after – feds,

9   pigs, politicians, bankers, policy makers, think tankers, the whole crew. . . . Anyone

10  who's not furthering the black flag." UC1 asked, "When?" Franey replied, "I don't have

11  anything in my hands [firearms], so I can't do anything." UC1 told Franey that he could

12  get him – that night – a firearm like "the ones you used on the camping trip," but if

13  Franey wanted "that shotgun" (referring to a Street Sweeper) it would take four or five

14  days. Regarding the firearm UC1 had available that night, Franey asked whether it was

15  the "compact one [AR-15] or the nostalgic one [AK-47]?" UC1 said it was the "compact

16  one." Franey asked if it was "semi," and UC1 confirmed it was. Franey replied, "Oh

17  yeah, that's fine with me. Save rounds." UC1 said he would sell it to Franey "at cost"

18  for $700. Franey replied, "That seems like a deal, man. I would take it."

19        Later in the conversation, UC1 asked if Franey also wanted him to try and get "the

20  other one" over the next four or days. Franey asked, "Oh, the Street Sweeper? . . . Of

21  course I want that." UC1 said it would cost $1,200. Franey replied, "Yeah, that's fine. .

22  . . Yeah, I would take both of 'em. Just in case I don't get to the hills and I gotta get

23  through the streets and they're all blocked up. I'm gonna die, it doesn't matter. . . . I'm

24  just worried if Allah accepts." Franey also asked for some "rounds" and "clips" for the

25  firearms, and offered to pay extra money for them. UC1 said he would be willing to sell

26  Franey both firearms and some magazines and ammunition at his cost of $1,900. Franey

27  agreed to this price.

28

Affidavit in Support of Search Warrants
USAO#2015R01121 - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    UC1 asked if Franey wanted the AR-15 that night. Franey stated that he preferred

2  to wait four or five days until UC1 had both firearms and then receive them at the same

3  time. Franey explained that he did not want to have a firearm in his car that night along

4  with his wife and children, and that he also was reticent to drive with a firearm because

5  his vehicle tabs were expired. UC1 told Franey, "You need to tell me whether or not

6  you're serious, 'cause I'm gonna sell it [the AR-15] if you're not." Franey replied, "No, I

7  want it. I want the other one, too." Franey also asked whether the AR-15 could be

8  converted to fully automatic, and commented, "I would like a selector switch, just in

9  case." UC1 and Franey agreed to meet again in four or five days, and Franey assured

10  UC1 he would have the $1,900. UC1 told Franey not to "leave him hanging." Franey

11  replied, "Since the beginning, I've wanted you to put something like this in my hands."

12    Also during this meeting, UC1 asked Franey if he had obtained any more

13  information about the "military retreat." Franey stated, "We need to find out when it is

14  and stuff like that. . . . To take out generals and colonels would be beautiful. It's a good

15  one. Wake 'em up." UC1 told Franey to let him know if he finds out any additional

16  information when they next meet.

17    A few hours after parting ways with UC1, as he was starting to drive back home

18  with his family, Franey's vehicle was pulled over in a random traffic stop by a local

19  police officer, who pulled the vehicle over because it had an expired registration and

20  failed to use a turn signal. According to a police report, Franey was aggressive and

21  belligerent with the officer during the traffic stop. Among other things, Franey made

22  several comments regarding police oppression, and he said something in what sounded

23  like Arabic and told the officer "it means ISIS." During the traffic stop and immediately

24  thereafter, Franey placed three phone calls to UC1. During these conversations, Franey

25  expressed extreme anger over getting pulled over by the police and also expressed veiled

26  suspicion directed towards UC1 that the traffic stop had occurred.

27  //

28  //

Affidavit in Support of Search Warrants
USAO#2015R01121 - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   The following day, on January 30, 2016, UC1 and Franey had the following

2   exchange of text messages:

3   Franey:      [] yeah flying knees and rear naked chokes huh after very little
4                consideration I think you should go ahead with getting rid of that
                 hockey stick [firearm] and forgo ordering that other one because I
5                just don't find the funds in the families budget right now for any
6                luxury items unless by the *qadr* of Allah [] you find yourself in a
                 position shortly where you can swing by and donate them as *sadaqa*
7                charity.

8   UC1:         [] All okay?  Why the change in not wanting to play hockey?  I
9                already ordered the other stick.  [] Nevermind.

10  Franey:      [] we re Muslim's always ready to play hockey that comes standard
11               built to a Muslim but there is an abundance of hockey sticks to be
                 head or taken and like I said after a short consideration irts just not
12               in the budget right now when their so abundant and with the pee on
13               feds and their underling cops salivating to fuck with me I don't need
                 to give them a green light but if you do find yourself in a time of
14               plenty feel free to drop off anything

15

16                          **ITEMS TO BE SEIZED**

17          The information contained in the Complaint and this affidavit supports the

18  requested warrant to search Franey's residence and vehicle for all of the evidence listed

19  in Attachment B ("Items to be Searched for and Seized").  UC1 met with Franey on

20  several occasions at Franey's residence, located at 25 Fairbairn Road, Montesano,

21  Washington.  Many of the conversations concerning Franey's desire to acquire firearms

22  and his motivations for doing so took place inside of Franey's residence and/or

23  immediately outside of the residence.  Moreover, Franey drove in his Lincoln Town Car

24  on several occasions to meet with UC1, and also drove the car on other relevant

25  occasions, such as when he visited the Satsop Nuclear Power Plant and when he twice

26  inspected firearms related items and ammunition at the hardware store in Aberdeen.

27  //

28  //

1        As described in the Complaint and this affidavit, Franey is known to have used

2   several cellular telephones and/or smartphones in furtherance of the criminal activities

3   alleged in the complaint.  During the course of his contacts with UC1, Franey used at

4   least three different smartphones to communicate with UC1.  Franey used these

5   smartphones to have oral conversations with UC1 (over the telephone), send and receive

6   numerous text messages to and from UC1, and send numerous internet links and similar

7   information to UC1 about ISIL and various alleged atrocities committed by the United

8   States military overseas, all of which formed the basis for Franey's stated motivation to

9   acquire firearms – in order to conduct a domestic attack against law enforcement officers

10   and/or U.S. government and military personnel.  Stored internet usage information on the

11   smartphones is relevant to the investigation because it will constitute evidence of

12   Franey's motivation to possess and acquire firearms.  Stored locator data is relevant to

13   the investigation because it will confirm Franey's whereabouts at various times relevant

14   to this investigation, for example, during the times he visited the Satsop Nuclear Power

15   Plant, the hardware store, and his meetings with UC1.

### REQUEST FOR "NO KNOCK" AND ALL-HOURS WARRANT

17        I am requesting that the search warrant for Franey's residence be a "no knock"

18   warrant, for the safety of the officers and the residents of the premises to be searched.  I

19   have reviewed the case law regarding no-knock search warrants, including *United States*

20   *v. Combs*, 394 F.3d 739 (9th Cir. 2004), and *United States v. Bynum*, 362 F.3d 574 (9th

21   Cir. 2004), which provides that exigent circumstances must exist to justify a law

22   enforcement officer's entry without first knocking and announcing their presence.  In this

23   particular case, I believe that exigent circumstances exit to justify entry into the target

24   premises without announcing police presence, for the following reasons:

25       • Franey has repeatedly stated that he wants to attack, fight, and kill law

26          enforcement officers if and when they made entry into his residence.

27          Moreover, he has specifically and consistently stated that he wants to kill

28          FBI agents and other federal authorities.

Affidavit in Support of Search Warrants
USAO#2015R01121 - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

- During the past two years, Franey has made consistent efforts to obtain firearms from his neighbors, UC1, and other sources. Although we believe Franey does not currently possess any firearms, this is by no means a certainty. For example, he recently has discussed trying to purchase AK-47s from sources other than UC1, and it is unknown whether he has successfully acquired any firearms. Franey has stated on numerous occasions that he would use any firearms in his possession to shoot and kill police officers making entry into his home.

- Franey regularly carries a large knife on his person that he could use to attack law enforcement officers during the execution of the search warrant. UC1 has witnessed Franey with this knife (the blade of which is 3-5 inches long) on several occasions. According to UC1, Franey typically carries the knife in pockets of a vest that he commonly wears. During two or three of the meetings with Franey, UC1 and/or other UCs had visual confirmation that Franey was carrying the knife. On other occasions, Franey referenced having the knife in his possession. During nearly all of his meetings with UC1, Franey was wearing the same vest, including meetings that took place inside of his home.

Similar concerns also serve as "reasonable cause" to execute the search warrants outside of the normal hours of 6:00 a.m. to 10:00 p.m.

//
//
//
//
//
//
//
//

Affidavit in Support of Search Warrants
USAO#2015R01121 - 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1

## <u>CONCLUSION</u>

2      Based upon the information set forth above, there is probable cause to believe that

3  residence of Daniel Seth Franey, located at 25 Fairbairn Road, Montesano, Washington,

4  and a 1997 Lincoln Town Car, bearing Washington license plate B00263K and VIN

5  1LNLM81W3VY705883, registered Daniel Seth Franey, contain evidence and fruits of

6  the above described offenses.

7

8

9

10      Joseph C. Deaver
       Special Agent, Federal Protective Service

11

12

13      Subscribed and sworn to before me this 5th day of February, 2016.

14

15

16

17      THE HONORABLE KAREN L. STROMBOM
       United States Magistrate Judge

18

19

20

21

22

23

24

25

26

27

28

Affidavit in Support of Search Warrants
USAO#2015R01121 - 18

# EXHIBIT 1

# (CRIMINAL COMPLAINT)